**FIRST METHODIST EPISCOPAL CHURCH OF COLUMBUS,** Plaintiff-Appellant, v. **BEATTY AND OHIO-ILLINOIS DEVELOPMENT COMPANY,** Defendants-Appellees.

Ohio Appeals, Second District, Franklin County.

No. 4785. Decided February 16, 1953.

Arthur Prendergast, Jr., Lucas & Lucas, Ralph W. Lucas, of Counsel, Columbus, for plaintiff-appellant.

Dunbar & Dunbar, Frank C. Dunbar, Paul L. Selby, Jr., of Counsel, Columbus, for defendants-appellees.

**OPINION**

By THE COURT.

This is a de novo appeal. The issue drawn involves title to a part of lot No. 2 of the George M. Parsons Subdivision in the City of Columbus, located on the south side of Bryden Road near 18th Street, with a frontage of 47½ feet on Bryden. Road and a depth of 160 feet extending to the south to Bryden Alley. Lot 1 of said subdivision is to the west and adjacent to lot No. 2. We hereinafter refer to these lots as Nos. 1 and 2.

Plaintiff also owned lots Nos. 3 and 4 in the same subdivision, No. 3 to the east of No. 2, and No. 4 to the east of No. 3. All lots are of like dimensions. Before the making of the deed sought by the defendants to be reformed the plaintiff owned all of the foregoing lots. At that time the Church edifice of plaintiff was located on Lots 3 and 4. The parsonage to the Church, then occupied by its minister, was on lot No. 1, and all of this building except a porch thereon was upon lot No. 1. The porch on the east side and to the front of the parsonage extended over and upon lot No. 2 for a distance of 3.65 feet. This porch, more than 17 feet in length, 7 feet in width, about 5 feet high and of brick construction, rested upon a solid cement foundation.

On the rear of the lot and along the alley there was a brick garage. This building was known to stand upon parts of both lots 1 and 2.

After negotiations, which we hereinafter consider, the Church and the defendant company consummated an agreement wherein the defendant company was to purchase the parsonage and the lot on which it stood. Thereafter, in December, 1941, the Church made a deed to defendant company wherein formal description of lot No. 1 only was incorporated. At the time that this deed was made the trustees of the Church and the agent of the purchaser did not know that the porch extended over and onto any part of Lot No. 2. However, the location of the garage was known and defendant company was given the privilege to move that part of the garage which was not on its lot, to the land which it received by the deed from the Church. The garage has not been moved, and now, admittedly, is located partly on lot No. 2.

From the time that the deed was made and for a period of about seven years the defendants occupied the parsonage. At that time a survey was made of the lots and it developed that a part of the porch was located on lot No. 2. The Church then took steps to assert title to all of lot No. 2, placed timbers along the line to the rear of the porch, planted hedge up to the line of Lot 1 which the defendant, Beatty, removed and

as a result of this developing situation the plaintiff instituted its action to quiet title to all of lot No. 2. The defendant answered by denying the material averments of the petition and by cross-petition sought to reform the deed so as to include four or five feet of lot No. 2, extending the full length of the lot from Bryden Road to Bryden Alley parallel to and four or five feet from the east line of lot No. 1. Plaintiff replied and when the cause came on for hearing, amended the prayer of its petition insofar as it required the removal of the porch from lot 2 conceding that defendant had an easement in lot 2 to the extent of the encroachment of the porch thereon.

The judgment in the Common Pleas Court was for the defendant Beatty; the deed was reformed so that the description of the land therein conveyed would include a strip off of lot No. 2 3.65 feet wide fronting on Bryden Road and along the eastern line of lot No. 1 to the south, 138.25 feet.

From this order this appeal on questions of law and fact is prosecuted.

Although preliminary oral negotiations were conducted by and on behalf of the parties and certain preliminary resolutions were offered and adopted by the Church authorizing the sale of the parsonage property, the first written communication leading up to the sale was a letter from the Development Company by Frank C. Dunbar, President, to the Board of Trustees of the Church, care of J. E. Bulen, a trustee, which described the property upon which an offer of purchase was made, in this language:

"This is to confirm our verbal offer made to Mr. English that Ohio-Illinois Development Company will purchase the Bryden Road parsonage property and pay therefor the sum of $6500.00 cash."

The authorization to sell had been granted on motion in the minutes of October 3, 1941, to the effect that the "Board of Trustees proceed to sell the parsonage and the lot only upon which it stands and to offer it at a price of $7500.00." Succeeding the letter with the offer of purchase the Board of Trustees met, of date October 25, 1941, passed a resolution accepting the offer of the defendant company and describing the property to be deeded as "the parsonage at 869 Bryden Road, this city, together with the one lot of land whereon said building stands, being lot No. 1," etc., * * * "together with the right to remove the garage from the lot next east thereof to the lot so purchased, at a consideration price of $6500.00."

It will be observed that this last resolution for the first time specifically describes lot No. 1 as being the one lot of land whereon the parsonage building stands. In the proposal

to purchase, the property was mentioned as the "parsonage property." The Board of Trustees by Mr. Bulen, of date October 27, 1941, wrote to the Development Company in the first paragraph of which it is said:

"I have your favor of the 23d containing your offer to purchase the First Methodist parsonage at 869 Bryden Road * * *."

In the fifth paragraph, this language:

"It is also understood that we are selling the west lot only, on which the parsonage stands, with our Church retaining the one to the east."

No mention was made of lot No. 1 as incorporated in the resolution of the Board of Trustees of October 25, 1941.

In reply to the letter of October 27, 1941, under date of October 30, 1941, this language is found:

"This will acknowledge receipt of your letter of the 27th concerning the purchase and sale of the parsonage property, 869 Bryden Road.

The terms stated are acceptable."

In the minutes of the Board of Trustees of the Church of date November 7, 1941, the pertinent parts thereof read;

"The Board of Trustees reported an offer of $6500.00 cash net for the present parsonage at 869 Bryden Road, the sale to include only the lot occupied by the house, the entire vacant lot being retained by the Church."

The resolutions, minutes and letters wherein it is stated that the property to be sold is "the lot only occupied by the parsonage or upon which it stands or only the lot occupied by the house, the entire vacant lot being retained by the Church" did not and could not describe the physical fact as to the location of the parsonage and could not be reconciled therewith. This but accentuates the common understanding that the parsonage was on lot 1 only. It does not specifically appear, but it is inferable, that the vacant lot or parcel of land between the Church and the parsonage was, in part, at least, used as parsonage property. If there had not been some definite statement and understanding that this vacant lot was not to be included in the deed, it might have been the subject thereafter of controversy. The physical condition of lots 1 and 2, as it was visible, would create the impression that the parsonage was on one lot and that the vacant lot was another. It is inconceivable that the Church, or the purchaser at the time of the consummation of their transaction had any thought that to conform to their agreement it would be necessary to remove any part of the porch to the parsonage. When, then, the Church used restrictive language expressly reserving the so-called vacant lot, together with language that could not

apply to the facts, it seems clear that it must have had in mind when it spoke of the lot on which the parsonage stands or the west lot, the lot of land upon which the parsonage stood. No other meaning could conform to the physical facts because the parsonage did not stand on one lot alone but upon two lots. The parties accurately and correctly used certain terms defining a mutually known physical fact, viz., "the parsonage property and the parsonage and the * * * lot on which it stands." The other terms were used inaccurately and incorrectly and referred to an unknown but assumed fact, viz., "one lot of land whereon said building stands" and "the west lot only on which the parsonage stands." There are other indicia tending to support the claim of the defendants, such as the location of hedges and shrubs.

We are of the opinion that the defendant Beatty is entitled to a reformation of the deed to his predecessor in title so that it will include a part of lot 2. The extent to which the deed should be reformed presents another question.

Although the initial written proposal from defendant company to the Church defined the land to be bought, as "the Bryden Road Parsonage property" the answer by the Church Trustees to this proposal, in conformity to their resolution, limited the land to be sold to "the parsonage and the lot only upon which it stands." When, then, the defendant company accepted this announced understanding of the Church by saying "The terms stated are acceptable," it was put on notice of, and was bound to observe, the limitation. This limitation, in view of the common knowledge of the physical location of the porch and the fact that it stood upon both lots Nos. 1 and 2 could not restrict a transfer of title to that part of the lot No. 2 on which the porch actually stood, and to this extent only, may we find the mutual intention of the parties and support a reformation. Clear and convincing proof of an intention to deed more of lot 2 than the lot on which the porch stood does not appear, and that quantum of proof is required to support such a reformation of the deed.

The testimony in behalf of defendants of the viewing of the east line of the porch of the parsonage and the representations of the minister, as to the line, if made, could not bind the plaintiff because the minister is not shown· to have had authority to speak for the Trustees nor does it appear that these occurrences were brought to their attention.

The defendant, Beatty, is entitled to reformation of his deed from plaintiff, so that it will include that part of lot No. 2 on which the porch stands including the steps to the porch. The title of Beatty will be quieted to that part of lot

No. 2 heretofore described. The title of plaintiff will be quieted to the remaining part of lot 2.

Judgment accordingly.

WISEMAN, PJ, MILLER and HORNBECK, JJ, concur.